## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| THE FARMERS NATIONAL BANK OF DANVILLE )<br><br>Plaintiff,                                )<br><br>v.                                          )<br><br>GRABBER CONSTRUCTION PRODUCTS, INC., )<br>NEWPORT GROUP, INC., GLENN TONKIN,  )<br>MATTHEW MARTIN, RACHEL WESTON-      )<br>BODELL, RACHEL FISHER and SILVESTRE  )<br>CASTANEDA,                             )<br><br>Defendants.                          )<br><br> ) | Civil Action No. _____<br><br>**VERIFIED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff The Farmers National Bank of Danville, by counsel, and for its Complaint against the Defendants Grabber Construction Products, Inc., Newport Group, Inc., Glenn Tonkin, Matthew Martin, Rachel Weston-Bodell, Rachel Fisher and Silvestre Castaneda, states the following:

### NATURE OF THE ACTION

1.     This action involves mistaken distributions under an employee stock ownership plan that was subject to the Employee Retirement Income Security Act of 1974, as amended and supplemental state common law.  Plaintiff seeks equitable and other relief to recover those distributions and to recover damages resulting from the Defendants' actions described herein.

### PARTIES

2.     The Farmers National Bank of Danville is a Kentucky Corporation with its principal executive offices located in Danville, Kentucky. It operates WealthSouth Concierge

Financial Services as a division, providing wealth management and trust services to its clients. (herein after collectively referred to as "Plaintiff").

3.   Upon information and belief, Defendant Grabber Construction Products, Inc. ("Grabber") is a Nevada corporation, with its principal executive offices located in Highland, Utah.  Grabber is an international distributor and manufacturer of premium fasteners and fastening systems for wood, metal and drywall applications in commercial and residential construction markets. Grabber also distributes a wide range of proprietary tools, accessories, equipment, and building materials to the construction industry.  Grabber has employees at its various locations throughout the United States that have participated in the Grabber Construction Products, Inc. Employee Stock Ownership Plan (the "Plan"). Grabber was at all relevant times the Plan Administrator.

4.   Upon information and belief, Defendant Newport Group, Inc. ("Newport Group") is a Delaware corporation, with its principal executive offices located in Walnut Creek, California. Newport Group provides recordkeeping, plan administration, trust and custody, consulting, investment advisory, investment management, insurance and broker-dealer services to its clients.  At all relevant times, Newport Group provided such services to Grabber.

5.   Upon information and belief, Defendant Glenn Tonkin ("Tonkin") is a resident of Vernon, Connecticut, and is or was an employee of Grabber and a participant that received certain distributions under the Plan.

6.   Upon information and belief, Defendant Matthew Martin ("Martin") is a resident of Westfield, Maine and is or was an employee of Grabber and a participant that received certain distributions under the Plan.

7.     Upon information and belief, Defendant Rachel Weston-Bodell ("Weston-Bodell") is a resident of Honolulu, Hawaii and is or was an employee of Grabber and a participant that received certain distributions under the Plan.

8.     Upon information and belief, Defendant Rachel Fisher ("Fisher") is a resident of Kaneohe, Hawaii and is or was an employee of Grabber and a participant that received certain distributions under the Plan.

9.     Upon information and belief, Defendant Silvestre Castaneda is a resident of Whittier, California and is or was an employee of Grabber and a participant that received certain distributions under the Plan.

10.    The defendants listed in ¶¶ 5-9 are collectively referred to herein as the "Individual Defendants."

## JURISDICTION AND VENUE

11.    This Court has exclusive subject matter jurisdiction over claims asserted herein pursuant to 29 U.S.C. § 1132(e)(1) and (2) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), as Plaintiff seeks equitable and other relief and to enforce terms of the Plan (29 U.S.C.A. §1132(a)(3)(B)) and this District is where the Plan was administered and/or the breach took place (29 U.S.C.A. § 1132(e)(2)), and process may be served in any district where a defendant resides or may be found (29 U.S.C.A. § 1132(e)(2)).

12.    This Court has jurisdiction pursuant to 29 U.S.C. § 1132(f) without regard to the amount in controversy or the citizenship of the parties to grant relief in 29 U.S.C. § 1132(a).

13.    This Court has personal jurisdiction over Defendants under the above provisions and because each is either a corporation that has conducted business in this District or is an individual that has sufficient minimum contacts with this District so as to make the exercise of

jurisdiction by this Court permissible under traditional notions of fair play and substantial

justice.

14.     Supplemental jurisdiction over the state law claims asserted in this action is

proper under 28 U.S.C. § 1367.

15.     Venue is also proper under 28 U.S.C. § 1391 because a substantial portion of the

transactions and wrongs complained of herein occurred in this District.

## FACTUAL BACKGROUND

### Employee Stock Ownership Plan

16.     On or about January 1, 2009, Grabber adopted the Grabber Construction

Products, Inc. Employee Stock Ownership Plan (the "Plan") for the benefit of the participants

and beneficiaries of the Plan. (attached as Exhibit 1).

17.     The Plan provides at pertinent part:

> Section 8.6 – Indemnification. To the extent permitted by law, the
> Employer shall indemnify and hold harmless the following, each referred
> to herein as an "indemnitee":
> ...(b)     each individual, if any, serving as Trustee, including as a member
> of any board of trustees;
>
> ...     Each Indemnitee shall be indemnified against any and all claims,
> loses, damages, judgments, expenses, including attorneys' fees, penalties
> and liability ("liability"), arising from the indemnitee's responsibilities in
> connection with the Plan or Trust, to the extent not covered by insurance
> (without recourse) paid for by the Employer or the Plan, unless the
> liability is judicially determined by a court from which not appeal can be
> taken, to be due to the indemnitee's gross negligence, intentional
> misconduct or breach of fiduciary duty under ERISA.

### Trust Agreement

18.     On or about May 27, 2010, effective June 1, 2010, Grabber entered as Employer

into the Trust Agreement for the Grabber Construction Products, Inc. Employee Stock

Ownership Plan ("Trust Agreement") with non-party PBI Bank as Trustee. (attached as Exhibit 2).

19.    The Trust was established to hold and administer the funds of the Plan for the
benefit of the participants and beneficiaries and in accordance with the Plan, the Trust
Agreement and ERISA.  All funds were provided by Grabber and deposited with the Trustee.

20.    The Trust Agreement provides in pertinent part:

2.1    <u>Acceptance of Trust and Agreement to Serve as Trustee</u>
...Unless specifically provided herein, all actions taken and
decisions made by the Trustee shall be at the direction of the
Employer, ...

2.8    <u>Responsibility for Payment of Benefits</u>
The Trustee shall make all payments required by the Plan. The
Trustee shall not be liable or responsible to any person for paying
out money or acting upon any notice, resolution, order, certificate,
opinion, telegram, letter or other document believed to be
genuine and to have been signed by the Employer or other proper
party or parties...

2.10    <u>Duty of Care</u>
The Trustee shall act in accordance with the fiduciary standards of
ERISA in the exercise of powers and performance of duties
hereunder. The Trustee shall not be liable for any action taken or
omitted upon the basis of facts supplied by the Employer, a
Participating Affiliate, or an appointed investment manager, or for
any mistake or judgement or other action made, taken or omitted
by the Trustee in good faith, or for any loss, except that the
foregoing relief from liability shall not include relief from
responsibility or liability for any responsibility, obligation or duty to
which the Trustee is subject under ERISA... The Trustee shall be
under no obligation to take any legal action or whatever nature
unless there shall be sufficient property in the Trust to save
harmless the Trustee with respect to any expenses or losses to
which the Trustee may be subjected through taking such action.

21.    On or about April 18, 2013, Grabber and the Plaintiff entered into an Engagement
Agreement ("Engagement Agreement") which removed the former trustee PBI Bank and
appointed Plaintiff as Successor Trustee of the Trust Agreement. (attached as Exhibit 3).

22.    The Engagement Agreement stated at pertinent part:

6.      Employer Obligations

...

    B.      Correction of Violation.  In the event the Trustee notifies the Employer that it has discovered that violation of state or federal law has occurred (including the occurrence of any event resulting in excise tax liability) in connection with the Plan or Trust, and such violation has not been corrected or paid, or that the administration of the Plan is deficient, the Employer agrees to take corrective action to the extent and in the form it determines is necessary to correct such violation or deficiency, to the reasonable satisfaction of the Trustee.

7.      INDEMNIFICATION

    A.      Indemnification.  Subject to the applicable provisions of ERISA, the Employer shall indemnify, to the greatest extent possible the Indemnitees for any loss, cost, expense or other damage, including attorney's fees suffered by any of the Indemnitees resulting from or incurred with respect with any legal proceedings or government agency action related in any way to the performance of services by any one or more of the Indemnitees pursuant to the Agreement ...The indemnification by this Paragraph shall extend to: (i) any action taken or not taken by any of the Indemnitees at the direction or request of the Plan Administrator or of any agent of the Plan Administrator, (ii) any action taken or not taken by any of the Indemnitees, provided that it is determined that the Indemnitees did not breach any fiduciary duty owed by such Indemnitees in taking or not taking such actions..., and (iii) all reasonable costs and expenses incurred by the Indemnitees in enforcing the indemnification provisions of this Paragraph, including reasonable attorney's fees and court costs.

...

    C.      Reimbursement of Expenses.   The Employer shall reimburse the Indemnitees for all reasonable costs that they incur in connection with any Proceeding, including costs of investigation, of testifying in any hearing, of responding to discovery proceedings, and of consulting with the Employer or the attorneys of the Employer.

23.     Pursuant to the Trust Agreement and the Engagement Agreement, Grabber directed Plaintiff via its agent Newport Group to make certain distributions to Plan participants, including the Individual Defendants, by and in the amounts specified by Newport Group.

24.     On or about June 27, 2017, Newport Group sent an email to Plaintiff regarding a cashed check image via its secure messaging system. When Plaintiff accessed the secure

message system, an old email (from October 2016) regarding "Batch 2" distributions was also still on the messaging system. Plaintiff mistakenly believed this was a directive for current distributions not realizing Newport Group had failed to remove this old email from its system to avoid any confusion. Upon information and belief, Newport Group's failure to remove the dated information was contrary to Newport Group's common practice.

25.     Plaintiff attempted to verify the information with Newport Group given it listed the distributions as "Batch 2" but Plaintiff did not receive a timely response from Newport Group.

26.     On July 5, 2017, Plaintiff complied with what was reasonably believed to be Newport Group's current distribution directive and made "Batch 2" distributions of $140,974.29 ($112,228.93 after tax withholdings). These distributions included as follows:

| Payee | Gross Distribution to Participants | Net of Taxes Amount Paid to Participants |
|---|---|---|
| Glenn Tonkin | $2,058.76 | $1,647.01 |
| Marcus Owens | $8,805.55 | $6,692.22 |
| Matthew Martin | $3,849.54 | $2,881.38 |
| Michael Romano | $10,074.48 | $8,059.58 |
| Nicolas Karanikolas | $452.81 | $362.22 |
| Rachel Weston-Bodell | $109,142.84 | $87,314.27 |
| Rachel Fisher | $3,483.06 | $2,786.45 |
| Silvestre Castaneda | $3,107.25 | $2,485.80 |

27.     On July 6, 2017, Plaintiff received a directive from Newport Group via its secure messaging system directing Plaintiff to make "Batch 1" distributions to Plan participants.

28.     On July 6, 2017, Plaintiff was informed by Newport Group that the "Batch 2" distributions were a mistake. Grabber was also informed of the mistake on this same date.

29.     On July 7, 2017, Plaintiff complied with Newport Group's directive and made "Batch 1" electronic distributions to Plan participants.

30.     On or about July 7, 2017, Plaintiff began sending stop payments on checks issued and sought reversals of electronic transfers for the mistaken "Batch 2" distributions to Plan participants. However, Plaintiff received push back from banking institutions requiring customer verification and contact before authorizing the reversal of the distributions.

31.     On or about July 10, 2017, Newport Group took the position that the error in "Batch 2" distributions was all due to Plaintiff's actions, that it had no responsibility and that it would take no action to contact Plan participants to correct the mistaken distributions.

32.     On or about July 11, 2017, in good faith and without obligation, Plaintiff began direct messaging to Plan participants that had received "Batch 2" distributions in error in an attempt to obtain the return of those distributions.

33.     Two of the Plan participants listed in Paragraph 26, Marcus Owens and Nicolas Karanikolas, returned the distributions. One other has agreed to make a return of the mistaken distribution to him.  Despite demand, the other listed Plan participants failed/and or refused to return the distributions, which currently totals $97,369.19.

34.     On or about September 12, 2017 and October 2, 2017, Grabber emailed and sent a letter to Defendant Weston-Bodell in an attempt to obtain a return of the mistaken "Batch 2" distribution that she received. Defendant Weston Bodell failed to return the distribution.

35.     During this same time period, the Plan ended and necessitated the making of final distributions to the Plan participants.

8

36.   On or about October 18, 2017, Grabber informed Plaintiff they were receiving calls questioning why some Plan participants that had made final elections had not received their funds or that they could not validate their rollover requests had been funded.

37.   On or about December 6, 2017, Grabber requested Plaintiff reimburse funds to the Plan and continue the collection process for mistaken "Batch 2" distributions separately.

38.   In December 2017, in good faith and without obligation, Plaintiff reimbursed the Plan $97,369.19 for the amount of the mistakenly paid "Batch 2" distributions.

39.   On February 27, 2018, Plaintiff wrote to Grabber and Newport Group to inform them of Plaintiff's rights and to demand reimbursement for the distributions.

## CAUSES OF ACTION

### COUNT I
### Claim for Enforcement of the Plan Section 8.6 Indemnification
### Under ERISA 29 U.S.C.A. § 1132
### (Against Defendant Grabber)

40.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.   Section 1132(a)(3)(B)(ii) of ERISA permits a fiduciary "to obtain other appropriate equitable relief ...to enforce any provisions of ... the terms of the plan."

42.   As discussed herein, the Plan at Section 8.6 states "Each Indemnitee shall be indemnified against any and all claims, losses, damages, judgments, expenses, including attorneys' fees, penalties and liability ("liability"), arising from the indemnitee's responsibilities in connection with the Plan or Trust, to the extent not covered by insurance (without recourse) paid for by the Employer or the Plan,..."

43.    As discussed herein, Plaintiff suffered losses, damages, expenses and attorney's fees in connection with the mistaken "Batch 2" distributions and due to Plaintiff's reimbursement of $97,369.19 to the Plan.

44.    Without legal justification or excuse, Employer Grabber has failed and/or refused to indemnify Plaintiff pursuant to Section 8.6 of the Plan.

45.    Plaintiff is entitled to equitable relief for enforcement of Section 8.6 indemnification of the Plan and reimbursement of all losses, damages, expenses and attorney's fees from Grabber.

**COUNT II**
**Claim for Breach of Contract – Engagement Agreement**
**(Against Defendant Grabber)**

46.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.    Plaintiff has performed all of its obligations under the Engagement Agreement with Grabber.

48.    Pursuant to Paragraph 6.B. of the Engagement Agreement states in part that "[i]n the event the Trustee notifies the Employer ...that the administration of the Plan is deficient, the Employer agrees to take corrective action ... necessary to correct such ...deficiency, to the reasonable satisfaction of the Trustee."

49.    Once Plaintiff notified Grabber of a deficiency in funds in connection with the Plan, Grabber was required to take the corrective action necessary to correct such deficiency.

50.    Without legal justification or excuse, Grabber materially breached the Engagement Agreement by failing to take action to correct the deficiency in the Plan and reimburse funds to the Plan and instead, required Plaintiff to reimburse funds to the Plan.

51.     The above referenced breach of the Engagement Agreement has directly and proximately caused substantial damage to the Plaintiff.

**COUNT III**
**Claim for Declaratory Relief – Trust Agreement**
**(Against Defendant Grabber)**

52.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53.     The Trust Agreement at Section 2.1 states in part: "...all actions taken and decisions made by the Trustee shall be at the direction of the Employer..."

54.     The Trust Agreement at Section 2.8 also states in part:

> The Trustee shall not be liable or responsible to any person for paying out money or acting upon any notice, resolution, order, certificate, opinion, telegram, letter or other document believed to be genuine and to have been signed by the Employer or other proper party or parties...The Trustee shall be under no obligation to take any legal action of whatever nature unless there shall be sufficient property in the Trust to save harmless the Trustee with respect to any expenses or losses to which the Trustee may be subjected through taking such action.

55.     The Trust Agreement at Section 2.10 further states in part:

> The Trustee shall not be liable for any action taken or omitted upon the basis of facts supplied by the Employer, a Participating Affiliate, or an appointed investment manager, or for any mistake or judgement or other action made, taken or omitted by the Trustee in good faith, or for any loss... The Trustee shall be under no obligation to take any legal action or whatever nature unless there shall be sufficient property in the Trust to save harmless the Trustee with respect to any expenses or losses to which the Trustee may be subjected through taking such action.

56.     The Plaintiff requests declaratory relief pursuant to ERISA 29 U.S.C.A. § 1132, 28 U.S.C § 2201(a), 28 U.S.C. § 2202 and KRS 418.040 *et seq.* and seeks a declaration under the Trust Agreement that recovery of the funds from the Individual Defendants is not the duty of Plaintiff, nor is Plaintiff obligated to pursue legal action to obtain recovery of the mistakenly

paid "Batch 2" distributions and to the extent Plaintiff incurs any liability or losses as a result of the above distributions, Plaintiff may pursue Grabber for satisfaction of same.

57.     An actual controversy of a justiciable nature presently exists between the Plaintiff and Grabber regarding these Trust provisions.

58.     The controversy is of sufficient immediacy and magnitude to justify issuance of declaratory relief by this Court.

59.     The issuance of the requested declaratory relief will terminate the existing controversy between the parties.

**COUNT IV**
**Claim for Declaratory Relief – Engagement Agreement**
**(Against Defendant Grabber)**

60.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

61.     The Engagement Agreement at Section 7.A. states in part:

> ... the Employer shall indemnify, to the greatest extent possible the Indemnitees for any loss, cost, expense or other damage, including attorney's fees suffered by any of the Indemnitees resulting from or incurred with respect with any legal proceedings ... related in any way to the performance of services by any one or more of the Indemnitees pursuant to the Agreement ... The indemnification by this Paragraph shall extend to: (i) any action taken or not taken by any of the Indemnitees at the direction or request of the Plan Administrator or of any agent of the Plan Administrator, (ii) any action taken or not taken by any of the Indemnitees, provided that it is determined that the Indemnitees did not breach any fiduciary duty owed by such Indemnitees in taking or not taking such actions..., and (iii) all reasonable costs and expenses incurred by the Indemnitees in enforcing the indemnification provisions of this Paragraph, including reasonable attorney's fees and court costs.

62.     The Engagement Agreement at Section 7.C. further states in part:

> The Employer shall reimburse the Indemnitees for all reasonable costs that they incur in connection with any Proceeding, including costs of investigation, of testifying in any hearing, of responding to discovery

proceedings, and of consulting with the Employer or the attorneys of the Employer.

63.     The Plaintiff requests declaratory relief pursuant to ERISA 29 U.S.C.A. § 1132, 28 U.S.C § 2201(a), 28 U.S.C. § 2202 and KRS 418.040 *et seq.* and seeks a declaration under the Engagement Agreement that Plaintiff is entitled to indemnification and the reimbursement of expenses from Grabber from any damages sought or awarded as a result of Plaintiff's performance of services under its contracts with Grabber.

64.     An actual controversy of a justiciable nature presently exists between the Plaintiff and Grabber regarding these Trust provisions.

65.     The controversy is of sufficient immediacy and magnitude to justify issuance of declaratory relief by this Court.

66.     The issuance of the requested declaratory relief will terminate the existing controversy between the parties.

**COUNT V**
**Claim for Unjust Enrichment/Contribution**
**(Against Defendant Grabber)**

67.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

68.     Grabber's refusal and/or failure to compensate Plaintiff for the Plaintiff's reimbursement of the mistaken "Batch 2" distributions constitute an unjust enrichment for Grabber.

69.     Because it is inequitable to allow Grabber the benefit of Plaintiff's reimbursement of the mistaken "Batch 2" distributions, Grabber is liable to Plaintiff to pay any sums by which it was unjustly enriched.

70.     In addition to and/or in the alternative, Plaintiff is entitled to recover from Grabber the proportion of its reimbursement of the "Batch 2" distributions proximately caused by Grabber's actions and/or inactions.

### COUNT VI
### Claim for Negligent Misrepresentation
### (Against Defendant Newport Group)

71.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

72.     Newport Group owed a duty to the Plaintiff as Grabber's Trustee, to exercise reasonable care in communicating through its secure messaging system to Plaintiff regarding distributions under the Plan.

73.     Newport Group knew or should have known that any failure on its part to exercise reasonable care would cause damage to Plaintiff and that said damage would be a reasonably foreseeable consequence of their actions.

74.     Newport Group breached its duty to exercise reasonable care and materially misrepresented distributions due under the Plan when it sent an email on June 27, 2017 to Plaintiff and failed to delete an old email from October 2016 from its messaging system regarding "Batch 2" distributions that Plaintiff mistakenly relied on as a request for current distributions.  Newport Group also breached its duty to exercise reasonable care by failing to correct this mistake despite requests for clarification from the Plaintiff. The actions of Newport Group were reckless and made with either the intention of inducing Plaintiff to act or Newport Group should have known that Plaintiff would be induced to act.

75.     Newport Group's breaches of duty and negligent acts and omissions facilitated the mistaken "Batch 2" distributions and constitute negligent misrepresentation which proximately caused damage to the Plaintiff for which Newport Group is liable.

## COUNT VII
### Claim for Unjust Enrichment/Contribution
### (Against Defendant Newport Group)

76.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

77.     Newport Group's refusal and/or failure to compensate Plaintiff for the Plaintiff's reimbursement of the mistaken "Batch 2" distributions constitute an unjust enrichment for Newport Group.

78.     Because it is inequitable to allow Newport Group the benefit of Plaintiff's reimbursement of the mistaken "Batch 2" distributions, Newport Group is liable to Plaintiff to pay any sums by which it was unjustly enriched.

79.     In addition and/or in the alternative, Plaintiff is entitled to recover from Newport Group the proportion of its reimbursement of the "Batch 2" distributions proximately caused by Newport Group's actions and/or inactions.

## COUNT VIII
### Claims for Equitable Restitution and Accounting
### Under ERISA 29 U.S.C.A. § 1132
### (Against Individual Defendants)

80.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

81.     Section 1132(a)(3)(B)(ii) of ERISA permits a fiduciary, such as Plaintiff as Trustee, "to obtain other appropriate equitable relief ...to enforce any provisions of ... the terms of the plan."

82.    As discussed herein, the Individual Defendants have mistakenly acquired funds via distributions from the Plan for which the Plaintiff is Trustee and have refused to return same despite demands that the Individual Defendants do so.

83.    The specifically identifiable funds that the Individual Defendants have mistakenly acquired, in equity and in good conscience belong to the Plan for which Plaintiff is Trustee. Upon information and belief, these funds currently remain in the Individual Defendants' possession and control.

84.    An equitable restitution or reimbursement is proper under Section 1132(a)(3)(B)(ii) of ERISA and the Individual Defendants should be ordered to return, transfer or cause to transfer to Plaintiff as Trustee of the Plan all funds mistakenly received as "Batch 2" distributions on July 5, 2017.

85.    Furthermore, Plaintiff has made a demand upon the Individual Defendants to fully and completely account for all distributions of funds made by Plaintiff on July 5, 2017.

86.    The Individual Defendants have failed to provide a full and complete accounting.

87.    The Individual Defendants should be ordered to provide a full and complete accounting to Plaintiff as Trustee of the Plan.

### COUNT IX
### Claim for Conversion
### (Against Individual Defendants)

88.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

89.    On July 5, 2017, Plaintiff mistakenly made "Batch 2" distributions to the Individual Defendants as Plan participants.

90.     On or about July 7, 2017, Plaintiff issued stop payments on any checks issued and sought reversals of electronic transfers for the mistaken "Batch 2" distributions to Plan participants. However, the Plaintiff was informed that the banks of the Individual Defendants required customer verification and contact authorizing the return of the distributions, which the Individual Defendants failed to provide.

91.     On or about July 11, 2017, in good faith and without obligation, Plaintiff began direct messaging to Plan participants that had received "Batch 2" distributions in error in an attempt to obtain the return of those distributions, but those efforts were unsuccessful.

92.     Despite Plaintiff's demands, the Individual Defendants have ignored the Plaintiff's requests and failed/and or refused to return the $97,369.19 in "Batch 2" distributions.

93.     By failing to issue the immediate refunds of these distributions, the Individual Defendants intended to exercise dominion and control over and converted property of the Plan which has caused damage to the Plaintiff as Trustee.

94.     The actions of the Individual Defendants were intentional, reckless, wanton or grossly negligent entitling Plaintiff to substantial punitive damages.

## COUNT X
### Claim for Money Had and Received
### (Against Individual Defendants)

95.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

96.     The Individual Defendants have wrongfully obtained distributions of funds that were intended to be used for the benefit of other Plan participants but which was not used for their benefit or given to them.

97.     The Individual Defendants are liable to Plaintiff as Trustee of those funds under the doctrine of money had and received.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands the following relief:

1.     Equitable enforcement of Section 8.6 of the Plan requiring Defendant Grabber to indemnify Plaintiff for all losses, damages, expenses and attorney's fees incurred in this matter;

2.     Entry of an award of equitable restitution against Defendants Tonkin, Martin, Weston-Bodell, Fisher and Castaneda, for return of their mistakenly paid individual distributions in favor of Plaintiff in the total amount of $97,369.19;

3.     Equitable relief requiring Defendants Tonkin, Martin, Weston-Bodell, Fisher and Castaneda to make an accounting of the mistakenly paid distributions set out above;

4.     Judgment against Defendants Tonkin, Martin, Weston-Bodell, Fisher and Castaneda for compensatory damages and punitive damages for conversion of the mistakenly paid distributions and/or under the doctrine of monies had and received;

5.     Judgment against Defendant Grabber for compensatory damages for breach of the Engagement Agreement's requirement to take corrective action to remedy a deficiency in the Plan;

6.     Judgement against Defendant Grabber for compensatory damages for the sums Defendant Grabber was unjustly enriched or in proportion to the damages caused by its actions and/or inactions;

7.     Judgement against Defendant Newport Group for compensatory damages for the sums by which Defendant Newport Group was unjustly enriched or in proportion to the damages caused by its actions, inactions and/or for its negligent misrepresentation;

8.     A declaration affirming Plaintiff's rights under the Trust Agreement with Grabber, namely that recovery of the funds from the Individual Defendants is not the duty of Plaintiff, nor is Plaintiff obligated to pursue legal action to obtain recovery of the mistakenly paid distributions and Plaintiff may pursue Grabber for satisfaction of any losses.

9.     A declaration of Plaintiff's rights under the Engagement Agreement, namely that Plaintiff is entitled to indemnification and the reimbursement from Grabber for any damages sought or awarded as a result of Plaintiff's performance of services under its contracts with Grabber.

10.     Prejudgment and post-judgment interest against all Defendants in favor of the Plaintiff;

11.     Plaintiff's reasonable costs, attorney's fees and expenses pursuant to 29 U.S.C. § 1132(g)(1) in bringing this action; and

12.     Any and all other relief to which the Plaintiff may appear entitled.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

<u>**VERIFICATION**</u>

By my signature below, I verify I have read the foregoing provisions of this Verified Complaint and said provisions are true and accurate to the best of my present knowledge and upon information and belief.

Rick Cash
Senior Vice President
Farmers National Bank of Danville
WealthSouth Concierge Financial Services

STATE OF KENTUCKY            )
                             ) ss
COUNTY OF JEFFERSON          )

The foregoing Verified Complaint was acknowledged before me by Rick Cash this 22 day of June 2018.

NOTARY PUBLIC, KENTUCKY AT LARGE
MY COMMISSION EXPIRES: July 28, 2021

DATED: June 22 , 2018.            Respectfully Submitted,


*/s/Kenneth A. Bohnert*
Kenneth A. Bohnert
Edward Busch
Scott Johnson
CONLIFFE, SANDMAN & SULLIVAN
2000 Waterfront Plaza
325 West Main Street, Suite 2000
Louisville, KY 40202
Tel: (502) 587-7711
Fax: (502) 587-7756
Email:  kbohnert@cssattorneys.com
        ebusch@cssattorneys.com
        sjohnson@cssattorneys.com


*Counsel for Plaintiff*